IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

JOSEPH FAULKNER,                        )
                                        )
              Plaintiff                 )
                                        )
vs.                                     )     CASE NO. CV02-HGD-0069-M
                                        )
WOODS TRANSPORTATION, INC., et al.,     )
                                        )
              Defendants                )

**ENTERED**

MAY 2 8 2004

**MEMORANDUM OPINION**     UNITED STATES DISTRICT COURT
                           NORTHERN DISTRICT OF ALABAMA

The above-entitled civil action is before the court on the motion for summary

judgment filed by defendants, Woods Transportation, Inc., and George Woods [Doc. #14].

This matter is before the undersigned United States Magistrate Judge based upon the consent

of the parties pursuant to 28 U.S.C. § 636(c)(1) and Fed.R.Civ.P. 73.  Plaintiff, Joseph

Faulkner, alleges that he was a victim of retaliation in 1998 in violation of Title VII of the

Civil Rights Act of 1964, as amended.  Plaintiff alleges that Woods Transportation and

George Woods violated Title VII by retaliating against him for filing a 1997 EEOC claim

alleging violations of the Age Discrimination in Employment Act and Americans with

Disabilities Act in connection with his discharge by Woods Transportation after he

complained about his removal from a bus route he worked as a driver and replacement with

a younger, less experienced driver.

Defendants contend in their motion for summary judgment that Faulkner has failed to make out a *prima facie* case of discrimination and, in the alternative, has failed to rebut defendants' legitimate, good faith reason asserted to justify his termination.

## STANDARD OF REVIEW

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v.*

*Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id*. at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). However, "[a] court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). It is, therefore, under this standard that the court must determine whether plaintiff can meet his burden of coming forward with sufficient evidence as to each material element of his claim sufficient to permit a reasonable jury to find in his favor.

## FACTUAL BACKGROUND

Plaintiff was employed as a bus driver for defendant Woods Transportation and had been since the 1980s. In April 1997, plaintiff filed a charge with both the Equal Employment Opportunity Commission (EEOC) and the National Labor Relations Board (NLRB). He claimed that he was terminated from his employment from Woods Transportation after he complained about being removed from his assigned bus route and given a "worse" route while his former route was assigned to a younger, less experienced driver. He claimed age discrimination with the EEOC and alleged an unfair labor practice with the NLRB. Subsequently, the NLRB complaint was resolved with a conciliation agreement executed in June 1997 wherein the parties agreed that plaintiff would be reinstated in his job and assigned to a bus route similar to the one he previously had been assigned. Although the NLRB complaint was resolved with this agreement, plaintiff's EEOC complaint was not resolved at that time.

Following this agreement, plaintiff drove a school bus for the defendant for the 1997-1998 school year. At the conclusion of the school year, he signed up to work the following school year as well. On or about August 10, 1998, the EEOC issued a Notice of Dismissal/Notice of Rights regarding his 1997 EEOC complaint. On August 27, 1998, plaintiff was suspended and subsequently discharged by defendant for allegedly inappropriate sexual conduct.

4

The allegedly improper conduct was reported by an aide, Janice Washington. Washington was assigned to ride on Faulkner's bus and attend to severely handicapped children who rode on that bus to and from school. On or about August 23, 1999, Washington reported that Faulkner had a pattern of driving erratically. She also alleged that Faulkner had kissed her the preceding May and that on about August 11, 1999, at a pre-school safety meeting of all bus drivers and aides, Faulkner took her by the hand and told her that he was "a very compassionate man." On August 27, 1999, a meeting was called to address these allegations.

At this meeting, Faulkner denied that he ever took Washington by the hand and made the statement that he was a compassionate man. In a statement made in response to the allegations, he states that at the end of the preceding school year, he thanked all of the staff that had worked together, kissed Ms. Vale Bills (school system bus coordinator) on the cheek and attempted to kiss Washington but that she "pulled away." He later elaborated on this statement by saying that on the last day of school (in May 1998), he wished everyone a happy and safe summer, kissed Bills on the cheek and also kissed Washington on the cheek but that Washington pulled away as he did so. [Faulkner Depo. at 96, 172]. Washington admits signing a statement that sets out these allegations but now claims she cannot recall either of these events. [*See* Plaintiff's Exhibit 14, Washington Depo.]. Faulkner also denied that he drove in an erratic manner, and this allegation never was mentioned by defendants as a reason for his termination.

At the August 27 meeting, Faulkner was told that Woods Transportation employee, Ms. Byers, had, during the meeting, received a call from Nancy Blackwood, a school principal who supervised matters relating to the handicapped bus riders. According to Byers, Blackwood had told her that Faulkner could not drive a bus for the school until the matter was resolved. Thus, Faulkner began a suspension from his job on that day. Blackwood denies that she ever made such a statement to Byers. [Blackwood Depo. at 15-16]. She denies having had any conversations with anyone at Woods Transportation about this incident. [*Id.* at 37]. Vale Bills states that the school had nothing to do with Faulkner's termination as a bus driver. [Bills Depo. at 69].

During the course of the next several days, Faulkner attempted to speak with various people associated with the dispute with very little success. When he asked Byers to explain what was going on, she refused to talk to him about the matter, stating that she knew he had filed an EEOC complaint in the past and that he was going to file one again. [Faulkner Depo. at 164].

On or about October 5, 1998, plaintiff received a letter from George Woods terminating him. This letter states as follows:

> Dear Mr. Faulkner:
>      Miss. [sic] Byers just recently brought me the response that you must have had your friend Gladys Barnes Fax [sic] to the office. I have looked at you [sic] response and talk [sic] with Ms. Byers and Mr. Kimball about the complaints made by Ms. Washington and the things she said in the meeting on August 27.

6

> You deny in writing what you admitted in the meeting
> about touching her hand and kissing Ms. Washington.  That is
> a violation of Sexual Harassment Policy and my decission [sic]
> is to discharge you for that reason.

[Plaintiff's Exhibit 1 to Woods Depo].  Prior to this event, Faulkner had never been the

subject of a sexual harassment complaint nor had he been disciplined for this or for any

work-related matters.

At his deposition, George Woods was questioned about plaintiff's 1997 EEOC

complaint.  Woods acknowledged that Faulkner had filed a complaint against him in 1997

stating, "Yeah, but I don't know why he done it." [Woods Depo. at 11].  He further states

that he put Faulkner back to work in 1997 because the EEOC[1] instructed him to "put him

back with an aide on the bus." [*Id.* at 20].

Woods also denied terminating Faulkner in 1998, claiming that Faulkner abandoned

his job. [*Id.* at 20-21].  Upon being shown his October 5, 1998, letter to Faulkner stating that

he was discharging him for sexual harassment, Woods claimed that Faulkner was only

dismissed until he got the harassment matter straightened out and that he did not do so. [*Id.*

at 21-22].  Woods acknowledged that the letter did not reflect any conditions related to

Faulkner's dismissal but stated that Faulkner knew this because "[w]e told him." [*Id.* at 22].

When questioned further about whether he discharged plaintiff, Woods later states "he

abandoned his job when he touched the lady." [*Id.* at 24].  However, he also claimed that

---

[1] Even though the agreement by which plaintiff was restored to his job was obtained by the NLRB, Woods testified that it was through the EEOC.

Blackwood called someone in his office and said that Faulkner could not drive a bus with Washington anymore. [*Id.* at 86-87].

When asked what it was that Faulkner needed to do to get this matter "straightened out," Woods admitted that he "had no idea" what it was that Faulkner needed to do. [*Id.* at 38]. When asked what acts the Woods Transportation sexual harassment policy prohibited, he responded "Getting sued, you know." [*Id.* at 38]. Woods also was unable to say where the alleged kissing incident took place. [*Id.* at 34].

Woods admitted that he did no investigation of the harassment allegation. [*Id.* at 37, 45-46]. He stated that once the allegation was made, that was "enough for me." [*Id.* at 46]. He never personally talked to Blackwood or Washington about the incident, stating he did not feel like he needed to do this. [*Id.* at 87]. Although he testified that he read a letter concerning what occurred at the meeting on August 27 and based his decision to terminate Faulkner on its contents, he also testified that he did not know who wrote the letter. [*Id.* at 60-61]. He also did not know who called the August 27 meeting where this letter originally surfaced or anything about whatever else may have been discussed at the meeting. [*Id.* at 36].

## DISCUSSION

Pursuant to 42 U.S.C. § 2000e-3

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, because he has opposed any employment practice made an unlawful employment practice by this subchapter, or

> because he has made a charge, testified, assisted, or participated
> in any manner in an investigation, proceeding, or hearing under
> this subchapter.

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove

the following elements: (1) he participated in an activity protected by Title VII; (2) he

suffered an adverse employment action; and (3) there is a causal connection between the

participation in the protected activity and the adverse employment decision. *Gupta v. Florida*

*Bd. of Regents*, 212 F.3d 571, 578 (11th Cir. 2000).

Defendants assert that plaintiff has failed to establish the necessary causal link

between his 1997 EEOC complaint and his 1998 termination. It is undisputed that plaintiff

engaged in a protected activity and that he suffered an adverse employment action. To

establish the causal relation element of his *prima facie* case of retaliation, Faulkner need only

show "that the protected activity and the negative employment action are not completely

unrelated." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (quoting

*EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)). Although

over a year passed from the time plaintiff made his initial complaint to the EEOC, the

investigation was ongoing and Faulkner's termination occurred immediately after the EEOC

issued its Notice of Dismissal/Notice of Rights with regard to his 1997 EEOC complaint.

Thus, despite the passage of time from the filing of the initial complaint, there is evidence

which reflects that the two events are not completely unrelated. This is especially so when

considering the fact that Woods testified that he had no idea why Faulkner filed the 1997

complaint against him, while further testifying that the reason he put Faulkner back to work driving a bus was because the EEOC instructed him to do so. Thus, the court finds that plaintiff has established a *prima facie* case of retaliation.

Defendants assert also that plaintiff has failed to rebut the legitimate, good faith reason put forth for his termination. George Woods claims that plaintiff was terminated based on the report he received that Faulkner had kissed an aide that worked on his bus. However, during his testimony, he repeatedly contradicted himself regarding the basis of his knowledge of plaintiff's alleged actions that were the basis for his termination. For example, at one point he denied having personally read any about the charges against Faulkner, claiming that someone read them to him. Later, he asserted that he did read a document that outlined the charges; however, he was unaware of the identity of the person who wrote this letter.

Further, Woods was unaware of the details of the allegations and did no independent investigation. He was not even aware of where this event was alleged to have occurred. Likewise, he was singularly ignorant of who was present or what occurred at the August 27 meeting, other than a vague allegation that Faulkner kissed a woman. In addition, Woods' claim that he removed Faulkner from his bus driving duties because school officials told him that he had to do so is disputed by those school officials.

Considering the evidence as a whole and construing it in the light most favorable to the non-moving parties, the court concludes that Faulkner has produced sufficient evidence

of pretext to call into question the validity of defendants' asserted good faith reason for terminating him. Therefore, defendants' motion for summary judgment with regard to Woods Transportation, Inc., is due to be denied.

However, individual capacity suits under Title VII are inappropriate. Relief is granted against an employer, not individual employees. *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991). Plaintiff alleges that Mr. Woods "had the power and authority as the sole incorporator to alter the terms, conditions, or privileges of the plaintiff's employment" and "does not follow the formalities of corporate existence in accordance with state law." [Doc. #23, Plaintiff's Brief in Opposition to Summary Judgment, at 7]. However, he proffers no specifics of any improprieties.

The Alabama Supreme Court has held that piercing the corporate veil is not a power that is lightly exercised. The concept that a corporation is a legal entity existing separate and apart from its shareholders is well settled in Alabama. *Co-Ex Plastics, Inc. v. AlaPak, Inc.*, 536 So.2d 37 (Ala. 1988); *Alorna Coat Corp. v. Behr*, 408 So.2d 496 (Ala. 1981). The mere fact that a party owns all or a majority of the stock of a corporation does not, of itself, destroy the separate corporate identity. *Messick v. Moring*, 514 So.2d 892 (Ala. 1987); *Forester & Jerue, Inc. v. Daniels*, 409 So.2d 830 (Ala. 1982). To pierce the corporate veil, a plaintiff must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences. *Washburn v. Rabun*, 487 So.2d 1361 (Ala. 1986); *Cohen v. Williams*, 294 Ala. 417, 318 So.2d 279 (1975). Where

the law recognizes one-man corporations, it is obvious that the law accepts the fact of domination by one person. *See* Ala. Code §§ 10-2A-90, 10-2A-58, 10-2A-57 (1975); *Co-Ex Plastics, supra.* Therefore, mere domination cannot be enough for piercing the corporate veil. There must be the added elements of misuse of control and harm or loss resulting from it. *Messick, supra; Washburn, supra.* Plaintiff has provided no evidence to support piercing the corporate veil in this case. Therefore, George Woods, an employee of Woods Transportation, is not a proper party. Defendants' motion for summary judgment as to George Woods, individually, is due to be granted.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this ___28th___ day of May, 2004.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

12